## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| SCOTT WINER | : | PRISONER CASE NO. |
| | : | 3:10cv743 (JCH) |
| v. | : | |
| | : | |
| COMMISSIONER OF CORRECTION | : | FEBRUARY 17, 2012 |
| | : | |

## RULING ON FOURTH AMENDED PETITION
## FOR WRIT OF HABEAS CORPUS (Doc. No. 17)

Petitioner, Scott Winer ("Winer"), currently confined at the Brooklyn Correctional

Institution in Brooklyn, Connecticut, commenced this action for a writ of habeas corpus

pro se pursuant to 28 U.S.C. § 2254.  He challenges his state court conviction for

failure to comply with sex offender registration requirements.

## I.    FACTUAL BACKGROUND

The Connecticut Appellate Court determined that the jury reasonably could have

found the following facts:

In March 1998, Winer was convicted of illegal sexual contact with a victim

younger than sixteen.  In January 2000, while incarcerated at the Enfield Correctional

Institution, Winer met with counselor Donald Cyr to complete sex offender registration

forms.  The forms advise an inmate of his responsibilities upon release and caution him

that failure to comply with any of the requirements is punishable as a Class D felony.  In

addition, the forms require basic information including the address where the inmate will

reside upon release.  Winer told Cyr that he was homeless and did not know where he

would live.  Cyr indicated on the forms that Winer refused to provide an address and

informed Winer that he must register with the Department of Public Safety within three

days of his release.  Cyr completed the forms using information provided by Winer, who then signed the forms.  State v. Winer, 112 Conn. App. 458, 460-61 (2009).

On March 13, 2000, Judith Cianchetti, a sex offender specialist assigned to the Bristol Office of Adult Probation, met with Winer and again advised him of the conditions of his probation.  When Cianchetti asked for an address, Winer told her that he did not know where he would be living.  He stated that he was going to look for an apartment and might move to Massachusetts.  Cianchetti told Winer that he could not leave Connecticut without permission and scheduled an appointment for him at the probation office immediately upon his release.  Id. at 461.

On March 24, 2000, Winer was released from custody.  Three days later, on March 27, 2000, Winer met with Richard Berglund at the probation office in Bristol.  Berglund reviewed the conditions of Winer's probation and asked where he was living.  Winer stated that he had traveled to Massachusetts and placed a deposit on an apartment there.  Berglund told Winer that he did not have permission to go to Massachusetts.  Winer stated that he had stayed with his former college roommate at a hotel for two days and had slept in a car on March 26.  Berglund gave Winer the address of a local shelter.  Later, Winer told Berglund that the shelter had been full and that he had slept at a bus station.  At Winer's request, Berglund applied to have Winer's probation transferred to Massachusetts.  The application was denied.  Id. at 461-62.

Winer was scheduled to meet with Berglund on March 28.  Instead, he went to the Hartford office and asked to have his probation transferred to Hartford.  Winer was scheduled to call Berglund on March 29.  He did not do so.  Winer called Berglund on March 30, but did not tell Berglund where he was staying.  Later in the day, Winer

2

called Berglund again and told Berglund that he was staying with a friend in Waterbury. On March 31, Winer told Berglund that he was flying to Florida that evening. Id. at 462.

At the time of Winer's release from custody, Thomas Karanda was the only enforcement officer at the Department of Public Safety, Sex Offender Registration Unit. At trial, he explained that, when inmates do not have an address when they are released, they can comply with the reporting requirement by updating the sex offender registration unit daily on their location. This procedure is followed until the inmate finds housing and can provide an address. Neither Winer's registration forms nor his file contained a residence address and Winer did not contact the unit within three days of his March 24, 2000 release. Id. at 462-63.

## II.   PROCEDURAL BACKGROUND

In July 2000, Winer was arrested and charged, inter alia, with failure to register his residence address. Attorney Louis Avitabile represented Winer on these charges in the Connecticut Superior Court for the Judicial District of New Britain at Geographical Area 17, Bristol. State v. Winer, 286 Conn. 666, 670-71 (2008).

Winer filed two pre-trial motions seeking dismissal of the failure to register charge. One was a motion to dismiss for lack of a speedy trial and the other a motion to construe the charge as having been nolled. Both motions were filed on January 11, 2005. The court held a hearing on January 12, 2005, and, the following day, issued an oral ruling denying both motions. Id. at 671-72. Winer was tried and convicted by a jury on the charge of failure to comply with the sex offender registration requirements. He was sentenced to a term of imprisonment of three years, execution suspended, and three years probation to run concurrently with the sentence Winer was then serving for

3

violation of probation.  Id. at 674-75.

Winer raised five issues on direct appeal:  (1) the trial court should have granted as a matter of law his motion to construe the charge as nolled and dismiss the charge with prejudice; (2) the trial court violated his right to a speedy trial and should have granted his motion to dismiss the charge; (3) the trial court should have granted his motion of acquittal because the state failed to prove that he intended to violate the statute, or that he did violate the statute when it was legally impossible for him to comply; (4) the trial court erred in denying his request to charge the jury on intent, on the meaning of the term "residence address," on the fact that the state was required to prove that he had a residence address and failed to register that address, and on mistake of law committed by the correctional counselor when he wrote that Winer refused to provide an address; and (5) the trial court erred in denying his motions for new trial and arrest of judgment.  See Pet'r's Brief on direct appeal, Resp't's Mem., App. C, at iii.

The Connecticut Appellate Court addressed only Winer's first issue.  The appellate court agreed that the charge against Winer was nolled automatically by operation of law when more than thirteen months passed after the last continuance in the case without commencement of trial.  The appellate court reversed the judgment of conviction and remanded the case with an order to dismiss the charge.  See State v. Winer, 99 Conn. App. 579, 581 (2007).

The state filed a petition for certification on three grounds:  (1) whether the appellate court properly construed the statutory language "continued at the request of the prosecuting attorney" to include something other than a specific request by the

4

prosecutor to postpone the trial, (2) whether the appellate court properly concluded that the trial court erred when it found that the continuance was not requested by the prosecutor; and (3) whether the appellate court properly concluded that Winer was entitled to a dismissal.  See Petition for Certification, Resp't's Mem. App. E.  The Connecticut Supreme Court granted certification limited to the following issue:  whether the appellate court properly determined that Winer was entitled to a dismissal based on its construction of the statute and review of the record.  State v. Winer, 282 Conn. 905.  The Connecticut Supreme Court reversed the judgment of the appellate court and remanded the case to enable the appellate court to consider Winer's remaining claims.  Winer, 286 Conn. at 687.

On remand, the Connecticut Appellate Court considered two claims:  (1) whether sufficient evidence supported Winer's conviction for failure to register as a sex offender and (2) whether the trial court properly instructed the jury.  The Connecticut Appellate Court affirmed the judgment of conviction.  State v. Winer, 112 Conn. App. 458, 460 (2009).

Winer sought certification to appeal on five grounds:  (1) whether the appellate court properly construed the term residence address in the sex offender registration statute; (2) whether the statute requires homeless or transient offenders to register a residence address and/or provides the means for them to do so; (3) whether the appellate court properly construed the statute; (4) whether the appellate court properly affirmed the trial court when the trial court improperly instructed the jury; and (5) whether the appellate court properly affirmed the trial court when it failed to address all of Winer's claims.  See Pet'r's Pet. for Certification, Resp't's Mem., App. N.  The

5

Connecticut Supreme Court denied the petition for certification without comment.  See State v. Winer, 292 Conn. 903 (2009).  Winer commenced this action by petition received on May 13, 2010.

## III.   STANDARD OF REVIEW

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  Estelle v. McGuire, 502 U.S. 62, 68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."  Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909 (2002).  Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. Carey v. Musladin, 549 U.S. 70, 74 (2006).

A decision is "contrary to" clearly established federal law where the state court

6

applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts.  Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case.  The state court decision must be more than incorrect; it also must be objectively unreasonable, "a substantially higher threshold."  Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); see Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits and which affords state-court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet).  In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  Id. at 1398-99.  Because collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition.  Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

## IV.   DISCUSSION

In his fourth amended petition, Winer challenges his conviction on three grounds: (1) violation of his right to a speedy trial; (2) denial of due process and a fair trial by the trial court's failure to charge the jury on the meaning of residence address, on intent,

7

that the state was required to prove that he had a residence address and failed to register it, and on the defense of mistake of law based on the interpretation and application of the statute by the correctional counselor; and (3) denial of due process and improper denial of Winer's motion for acquittal based on the correctional counselor's interpretation and application of the statute.  In analyzing these claims, both Winer and the respondent focus on three areas: the right to a speedy trial, sufficiency of the evidence to support Winer's conviction, and the jury instructions.

 A. <u>Speedy Trial</u>

 Winer first argues that he was denied his constitutionally protected right to a speedy trial.  After reviewing the record, the Connecticut Supreme Court set forth the following undisputed factual and procedural history relating to this claim.

 On March 24, 2000, Winer was released from custody to a five-year term of probation with special conditions.  On July 12, 2000, he was arrested and charged with three counts of violation of probation and one count of failure to comply with sex offender registration requirements.  On August 2, 2000, Winer pled not guilty and elected a jury trial on the failure to register charge.  On February 28, 2001, Winer appeared in court on all four matters.  He requested a continuance because he was awaiting a decision on the pending appeal of the risk of injury conviction.  This conviction had caused Winer to be placed on probation and led to the requirement that he register as a sex offender.  The state court continued the matter until April 6, 2001, On May 9, 2001, following a hearing on the violation of probation charges, Winer was found to have violated probation and was sentenced to a term of imprisonment of six years.  The matter of failure to register was placed on the firm jury trial list.  <u>Winer</u>, 286

Conn. at 432-33, 945 A.2d at 670-71.

On June 13, 2001, this matter was marked on the court's docket for a pretrial conference. Attorney Avitabile, a special public defender, was appointed to represent Winer on the failure to register charge. When the pretrial conference failed to result in a plea agreement, the state informed the court that the case would remain on the firm jury trial list. Id. at 433, 945 A.2d at 671.

Three years later, on October 29, 2004, Winer was in court on another matter. He asked the clerk about the status of this case and learned that the case remained pending. Winer wrote to the clerk stating that the case had been continued at the state's request and suggested that, according to state statute, the court should consider the case nolled because there had been no activity for over thirteen months. The clerk brought the letter to the state's attention, and the case was placed on the docket for December 14, 2004. On that date, the state requested that the case be placed on the active trial list for January 11, 2005. Winer filed two motions which were consolidated in his January 11, 2005 motion entitled "Corrected Motion To Construe A Nolle And To Dismiss With Prejudice." One motion sought dismissal pursuant to a state statute and the other sought dismissal for failure to comply with the state speedy trial provision. This was the first speedy trial motion Winer filed. Id., 945 A.2d at 671-72.

At a hearing on the motions, the court, sua sponte, elicited testimony from a clerk in geographical area seventeen in Bristol, where Winer's case was pending. The clerk testified that during 2003-2004, there were two judges assigned to the court. Ten trials were held, five of which were jury trials. Winer's case had been placed on the firm jury trial list on May 9, 2001. The case was placed on the pretrial docket on June 13,

9

2001, but was returned to the firm jury trial list the same day.  The clerk states that the firm jury trial list normally was considered the trial docket.  Attorneys and pro se defendants in those case would be called in to determine whether the case were ready for trial.  Although many cases were called during this period, Winer's case was not called until December 14, 2004.  Id. at 433-34.

Winer testified that he thought his trial would start on June 13, 2001.  However, he learned that the matter would not be pursued because he was incarcerated on the violation of probation charges.  Winer also stated that he recalled that the case had been nolled or dismissed, but that this action had not been recorded.  Attorney Avitabile testified that he was appointed to represent Winer on June 13, 2001.  Avitabile recounted that there had been a pretrial conference but no plea was reached because Winer maintained his innocence.  As a result, the case was returned to the firm jury trial list.  Avitabile could not speculate why Winer believed that the case had been nolled or dismissed.  Id. at 434.

The trial court rejected Winer's testimony as not credible.  The court noted that Winer had sufficient experience with the legal system to have known that cases do not disappear.  In addition, Winer was represented by counsel who understood that the case had been restored to the firm jury trial list and had not been nolled or dismissed.  The trial court noted that the request to restore the case to the firm jury trial list could be construed as a request for continuance by Winer because he had rejected the state's

plea offer.[1]  Finally, the court observed that Winer's interpretation of the speedy trial provisions would eviscerate the statute's requirement that a criminal defendant take some affirmative action, something that Winer had not done in this case.  Id.

On January 13, 2005, the trial court denied the motions.  The court found that Winer never moved for a speedy trial and had not shown that he was appreciably prejudiced by the state.  The trial court also implied that Winer made a strategic choice to permit the case to remain on the docket without filing a motion for speedy trial to enable him to bring a speedy trial claim.  Id. at 434-35.

The Sixth Amendment guarantees the right to a speedy trial.  Violation of that right is analyzed under the factors set forth in Barker v. Wingo, 407 U.S. 514 (1972). Under the Barker balancing test, the court weighs the conduct of both the prosecution and the defense.  Id. at 529.  Some of the factors that the court considers include "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  Id.  The various reasons for the delay do not receive equal weight; deliberate actions intended to impede the defense weigh heavily against the prosecution, while more neutral reasons, such as negligence or an overcrowded docket, weigh less heavily.  All reasons are considered, however, because it is the responsibility of the prosecution, not the defense, to bring a case to trial.  Id. at 531. With each factor, the court determines whether the blame falls more on the prosecution or the defense.  See Doggett v. United States, 505 U.S. 647, 651 (1992).  The Court

---

[1] This construction appears reasonable as counsel was appointed to represent Winer on that same day and the court assumes that counsel would need some time to prepare before commencing trial. On the other hand, Winer's assumption that trial would start on June 13, 2001, the same day counsel was appointed, does not appear reasonable.

has acknowledged that criminal defendants may have an incentive to employ delay as a defense tactic because memories fade and witnesses become unavailable.  <u>Barker</u>, 407 U.S. at 521.  "<u>Barker</u>'s formulation 'necessarily compels courts to approach speedy trial cases on an <u>ad</u> <u>hoc</u> basis.'"  <u>Vermont v. Brillon</u>, 129 S. Ct. 1283, 1291 (2009) (quoting <u>Barker</u>, 407 U.S. at 530).

The court is not required to consider only a decision from the state's highest court when reviewing federal habeas claims.  The court considers the last reasoned state court decision to determine whether the decision is contrary to, or an unreasonable application of, federal law.  Here, the court considers the decision of the trial court.  <u>See Ylst v. Nunnemaker</u>, 501 U.S. 797, 804 (1991); <u>see also, e.g.</u>, <u>McKinney v. Artuz</u>, 326 F.3d 87, 89 (2d Cir. 2003) (reviewing a trial court's denial of peremptory challenge under 28 U.S.C. § 2254(d)(1)).

In analyzing this claim, the trial court applied the balancing test articulated by the Connecticut  Appellate Court in <u>State v. Almgren</u>, 12 Conn. App. 364 (1987).  In that decision, the Connecticut Appellate Court specifically referred to <u>Barker</u> and described the *Barker* factors.  The trial court applied these factors in analyzing the claim.  Because the trial court applied the correct legal principles, the decision is not contrary to federal law.  <u>See Lurie v. Wittner</u>, 228 F.3d 113, 127 (2d Cir. 2000) (ruling is contrary to established federal law when state court applies law contradicting Supreme Court precedent)*,* <u>cert. denied</u>, 532 U.S. 943 (2001); <u>see also</u> <u>Early v. Packer</u>, 537 U.S. 3,8 (2002) (state court not required to cite Supreme Court cases, or even be aware of them, to be entitled to deference, as long as neither the reasoning not the result of the state court decision contradicts Supreme Court law).

12

The court next must determine whether the trial court's application of federal law was objectively unreasonable.  This determination depends on the nature of the particular rule.  If the rule is specific, the parameters of reasonable application are narrow.  If, however, the rule is more general in scope, there may be a substantial amount of discretion in applying the rule to the facts of a particular case.  See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  The Second Circuit has determined that the speedy trial rule is a rule of general scope entitling the state courts to heightened deference.  See Smith v. La Clair, 353 Fed. Appx. 486, 489 (2009) (citing Davis v. Kelly, 316 F.3d 125, 128 (2d Cir. 2003) (noting that Barker standard is "clearly established, but discretionary")).

The trial court considered the length of the delay, the reason for the delay, Winer's assertion of his right to a speedy trial, and prejudice to Winer, and the court concluded that, on balance, the factors did not favor Winer's claim that his right to a speedy trial was violated.

Winer was arrested on July 12, 2000.  His trial commenced four and one half years later, on January 11, 2005.[2]  This delay, without more, does not establish a violation of the right to a speedy trial.  In Barker, the Supreme Court found that a period in excess of five years did not constitute a violation of the right to a speedy trial.  407 U.S. at 533; see also Raybourn v. Skully, 858 F.2d 84, 89 (2d Cir. 1988) (seven year delay insufficient, standing alone, to constitute speedy trial violation).  Thus, the trial court properly considered the other factors.

----

[2] Winer considers only the time from June 13, 2001, the date the case was returned to the firm jury trial list, until trial, a period of three and one half years.

13

Regarding the reason for the delay, the trial court found the reasons neutral, a backlog of cases and few judges available to try them.  The trial court found that the state did not purposefully deprive Winer of his right to a speedy trial.  Resp't's Mem. App. Q, Transcript of Jan. 13, 2005 at 17.  Because the reason is neutral, it does not weigh heavily against the state.  Barker, 407 U.S. at 531 (neutral reasons for delay weigh less heavily against the state than deliberate attempts to hamper the defense).

The trial court found that Winer failed to assert his speedy trial right at any time prior to the January 2005 motion.  The court found Winer's testimony—that he had no reason to file a speedy trial motion because he understood the case to have been nolled or dismissed—not credible.  See Resp't's Mem. App. Q, Transcript of Jan. 12, 2005 at 60, 65.  Winer was represented by Attorney Avitabile on this case.  Avitabile stated that, at the conclusion of the June 2001 pretrial conference, the case was returned to the firm jury trial list and he could not speculate why Winer believed the case had been dismissed or nolled.  The failure by Winer and his attorney to assert the right to a speedy trial weighs heavily against Winer.  See Barker, 407 U.S. at 532 (holding that failure to assert right to speedy trial "will make it difficult for a defendant to prove that he was denied a speedy trial"); United States v. Vasquez, 918 F.2d 329, 338 (2d Cir. 1990) (holding that third factor weighed heavily against defendant who waited 22 months to assert speedy trial claim; delay suggests that expeditious resolution was not matter of pressing constitutional importance).

Finally, the trial court considered Winer's claims of prejudice.  When considering prejudice, the court does so in connection with the interests underlying the constitutional right to a speedy trial, namely, preventing oppressive pretrial

14

incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired.  Barker, 407 U.S. at 532.  Absent a showing of prejudice, the courts are reluctant to find a constitutional violation.  See United States v. Jones, 129 F.3d 718, 724 (2d Cir. 1997).

The trial court found that Winer failed to establish prejudice.  He was incarcerated on other charges during the entire period.  Thus, he did not suffer unwarranted pretrial incarceration or anxiety over when he would be incarcerated.  Any impact this pending charge may have had on parole eligibility was not the type of prejudice recognized in cases considering speedy trial issues.  Resp't's Mem., App. Q, Transcript of Jan. 13, 2005 at 8, 9, 19.  Prejudice unrelated to presentation of a defense is less serious.  See Barker, 407 U.S. at 532; see also United States v. Cyphers, 556 F.2d 630, 636 (2d Cir. 1977) (no constitutional speedy trial violation even though defendant's incarceration while awaiting trial in New York prevented a timely consideration of his parole in Ohio and prohibited him from receiving a federal sentence concurrent with his Ohio sentence).  Winer also argued that the delay impaired his defense because he lost documents related to his compliance with the registration requirements.  He did not explain what the documents would show or explain why the documents were necessary for his defense.

The trial court considered the four Barker factors in analyzing this claim.  The court determined that the length of the delay favored Winer, the reason for the delay did not weigh heavily against the state because the delay was not deliberate, the failure to assert his right weighed heavily against Winer and Winer also failed to demonstrate that he was prejudiced.  The trial court noted that Winer was represented by counsel and

15

acknowledged that delay may have been a defense tactic.  The trial court concluded, therefore, that Winer failed to establish the violation of his right to a speedy trial.

This court concludes that, in reaching its decision, the trial court reasonably applied Supreme Court law  and reasonably determined the facts in light of the evidence presented.  Although Winer now tries to expand his prejudice claim and provide more information about the lost documents, this court's review is limited to the record that was before the state courts. See Cullen v. Pinholster, 131 S. Ct. at 1398-99. The petition is denied on this ground.  See, e.g., United States v. Gonzalez, 399 Fed. Appx. 641, 645 (2d Cir. 2010) (denying speedy trial claim where delay favored defendant, no delays were caused by deliberate or bad faith actions by the government, defendant did not assert speedy trial rights, and defendant did not show how delay impaired defense).

B.    Sufficiency of the Evidence

The court next considered Winer's claim that the evidence presented was insufficient to support his conviction.  Winer argues that, because he was homeless, it was impossible for him to provide a residence address to the sex offender registration unit as required under the statute.  The focus of Winer's claim is that the state court improperly defined residence address as any place of abode or dwelling, however temporary it may be.  Winer also argues that the state was required to prove that he intentionally violated the statute.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  Federal courts,

16

however, do not relitigate state trials and make independent determinations of guilt or innocence.  See Herrera v. Collins, 506 U.S. 390, 401-02 (1993).  When a petitioner challenges the sufficiency of the evidence used to convict him, the court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  In discussing this standard, the Supreme Court has emphasized "the deference owed the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency [of the evidence] review."  Wright v. West, 505 U.S. 277, 296 (1992).  For example, credibility determinations generally are beyond the scope of review.  See Schlup v. Delo, 513 U.S. 298, 319 (1995).

When considering a sufficiency of the evidence claim, the federal court looks to state law to determine the elements of the crime.  See Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002).  The federal court is bound by a state court's interpretation of state law, even where the interpretation is announced on direct appeal of the challenged conviction.  Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

In analyzing this claim, the Connecticut Appellate Court applied state law that mirrors the federal standard set forth in Jackson v. Virginia.  See Winer, 112 Conn. App. at 463, (citing State v. Owens, 100 Conn. App. 619, 635, cert. denied, 282 Conn. 927 (2007)).  Because the trial court applied the correct legal principles, the decision is not contrary to federal law and the court must determine whether the appellate court's decision was an objectively reasonable application of federal law.  See Early, 537 U.S. at 8.

17

The Connecticut Appellate Court began its analysis by setting forth the language of the statute to ascertain the elements of the crime.  Under Conn. Gen. Stat. § 54-251(a), the state was required to prove that Winer was convicted of a criminal offense against a victim who was a minor and that Winer did not register has residence address with the Commissioner of Public Safety within three days following his release from prison.  Winer, 112 Conn. App. at 463-64.

Winer argued that it was impossible for him to comply with the statute because he did not have a residence address at that time and, even if he did have a residence address, he did not intend to violate the statute.  The term residence address is not defined in the statute.  Winer proposed that a residence is a place where a person dwells permanently or for a considerable time.  The state argued that, because registration must occur within three days and the purpose of the statute was to protect the public by keeping track of the location of sex offenders, a residence is any place a person stays, however temporary.

The appellate court concluded that the trial court had utilized a definition that was consistent with the intent of the statute and that comported with the enforcement officer's testimony regarding compliance with, and the purpose of, the registration requirement.  Id. at 465-66, 963 A.2d at 93.  This broad definition is in accordance with the practice of the state courts not to construe a statute in a manner that would thwart the statute's purpose.  See Doe v. Marselle, 236 Conn. 845, 859 (1996).  The appellate court noted that Winer's definition would excuse compliance with the statute by any sex offender who was homeless or residing in temporary housing, thereby frustrating the intent of the statute that the locations of all sex offenders be on file.  Thus, the

18

Connecticut Appellate Court found the state court's construction of the statute to be reasonable.  This court is bound by the Connecticut Appellate Court's interpretation of state law, even though the interpretation was announced on direct appeal of Winer's conviction.  See Bradshaw, 546 U.S. at 76.

     In addition, the Connecticut Appellate Court determined that, because the sex offender registry was created to benefit the public, failure to comply with the registration requirement was a strict liability offense and the state was not required to prove that Winer intended to violate the statute.  Winer, 112 Conn. App. at 466, 963 A.2d at 93-94 (citing State v. T.R.D., 286 Conn. 191, 220 (2008) (holding that crime of failing to comply with sex offender registry requirements is a strict liability offense)).  When construing statutes enacted to protect the public, the Supreme Court has inferred from silence that Congress did not intend to require intent to establish the offense.  See Staples v. United States, 511 U.S. 600, 606 (1994) (noting that there is no intent requirement for "public welfare" or "regulatory" offenses, such as statutes criminalizing undocumented sales of certain narcotics or shipment of adulterated or misbranded drugs); United States v. Freed, 401 U.S. 601, 697 (1971) (noting exception to intent requirement for regulatory statutes involving activities affecting public health, safety and welfare and finding no intent required for conviction of possession of unregistered hand grenades under statute prohibiting a person from receiving or possessing a firearm not registered to him).  The Connecticut sex offender statute was enacted to protect society, not to punish the offender.  See State v. Waterman, 264 Conn. 484, 489 (2003).  This court is bound by the Connecticut Appellate Court's interpretation of the statute.  See Bradshaw, 546 U.S. at 76.

Although Winer now argues that he was unaware that he was required to contact the sex offender registration unit within three days of his release, his specific knowledge is irrelevant to a strict liability offense.  In addition, Counselor Cyr informed Winer that he should contact the sex offender registration unit upon discharge and did not tell him that he should contact the unit only if information on the forms had changed.  The form Winer signed contained this same information.  See Resp't's Mem. App. D, Appendix to the State's Brief on direct appeal, at A26-27.  The conditions of his probation also were explained to Winer shortly before his release by the sex offender specialist.

Trooper Karanda testified that all sex offenders were required to report to the sex offender registration unit to confirm and update the information provided prior to their release and that the unit wanted to know the whereabouts of all sex offenders, even if they did not yet have permanent housing arrangements.  Trooper Karanda testified further that Winer did not report to the sex offender registration unit to update his information within three days of his March 24, 2000 release from custody and Winer's file contained no record of any phone calls.  In contrast to his current argument, Winer testified that he contacted unidentified persons in the unit by phone.  The jury was entitled to believe Trooper Karanda instead of Winer on this issue and the jury's credibility determination is beyond the purview of this court.  See Schlup, 513 U.S. at 319 (credibility determinations generally are beyond the scope of federal habeas corpus review).

The Connecticut Appellate Court viewed the evidence in a light most favorable to sustaining the verdict and concluded that the evidence was sufficient to support Winer's

conviction.[3]

Winer argues that other states have interpreted similar statutes to exclude

homeless persons from the registration requirement.  The fact that some states have

interpreted similar language differently, does not warrant federal habeas corpus relief.

Winer must show that the state court decision is an  unreasonable application of federal

law.  He has not done so.  Because the appellate court reasonably applied federal law

in determining that there was sufficient evidence to support Winer's conviction, the

fourth amended petition for writ of habeas corpus is denied on this ground.

C.      Jury Instructions

Finally, Winer challenges several of the jury instructions.  The burden of proof on

a state prisoner regarding a claim of improper jury instruction is substantial.

> The burden of demonstrating that an erroneous instruction was so
> prejudicial that it will support a collateral attack on the constitutional
> validity of a state court's judgment is even greater than the showing
> required to establish plain error on direct appeal.  The question in
> such a collateral proceeding is "whether the ailing instruction by itself
> so infected the entire trial that the resulting conviction violates due
> process" not merely whether "the instruction is undesirable,
> erroneous, or even 'universally condemned.'"

Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (quoting Cupp v. Naughten, 414 U.S.

141, 147, 146 (1973)) (footnote omitted).  The federal court will review a state court jury

---

[3] Winer argues that the court should consider a characterization of the sex offender registration
statute included in remarks made by Commissioner of Public Safety John A. Danaher III to the state
legislature in 2009.  See Pet'r's Mem., Doc. No. 32, at 41-42.  Winer's argument fails for two reasons.
First, this argument was not presented to the state courts.  Second, as indicated, the federal court is
bound by the state court's interpretation of state law.  Third, the Commissioner's remarks relate to a
perceived gap in the statute that occurs when, after complying with the initial registration requirement,
the sex offender become homeless and does not have an address to which the Department of Public Safety
can send periodic notices seeking to verify the offender's address of record.  This is a separate issue from
the procedure that a homeless sex offender should follow to initially register his address.

charge only where the challenged instruction has so infected the trial as to violate due process. See Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001). The Second Circuit applies a three-part test to determine whether the failure to give a requested instruction constitutes a federal due process violation. First, the court must determine whether the requested instruction was required as a matter of state law. Second, the court must decide whether the failure to give the requested instruction so infected the entire trial as to rise to the level of a constitutional violation. Third, the court must determine whether the federal court can remedy the state's failure to give the charge within the limitations imposed under section 2254. Id. When conducting its review, the federal court must consider the jury instructions as a whole rather than in isolation. See California v. Brown, 479 U.S. 538, 541 (1987).

Winer challenges the trial court's failure to charge the jury on his opinion of the meaning of residence address, on intent, that the state was required to prove that he had a residence address and failed to register it, and on the defense of mistake of law based on the interpretation and application of the statute by the correctional counselor. In analyzing the insufficiency of the evidence claim, the Connecticut Appellate Court determined that the trial court used a reasonable definition of residence address and concluded that the registration statute imposed strict liability. In light of that analysis, this court finds that the first three instructions were not required by state law. Therefore, Winer's first three claims of improper jury instructions are without merit.

Regarding the charge on mistake of law, the Connecticut Appellate Court acknowledged that, under Conn. Gen. Stat. § 53a-6(b), a person may be relieved of criminal liability if he acts under a mistaken belief that his action does not constitute an

22

offense as a matter of law and that he based this belief on an interpretation of the statute by a person legally charged with enforcing it.  The court went on, however, to conclude that the record contained no evidence that Winer relied on a misstatement of the law by any public official.  Thus, the Connecticut Appellate Court determined that the trial court properly refused to give the requested charge.  Winer, 112 Conn. App. at 466-67, 963 A.2d at 94.

The state court determined that Winer was charged with failing to report to the sex offender registration unit within three days of his release from custody.  Whether Cyr incorrectly interpreted the registration statute when he indicated on the form that Winer refused to provide an address did not change the fact that Winer did not report. The jury found that, regardless of whether Winer had a permanent address, he was required to report to confirm the information on the form and he did not do so.  Cyr informed Winer of this obligation and did not tell him to report only if he had a permanent address.  The court cannot discern how the requested charge would have altered the jury's findings.

Winer argues that the failure to give the required charge on mistake of law violates his rights under Raley v. Ohio, 360 U.S. 423 (1959), and Cox v. Louisiana, 379 U.S. 559 (1965).  In Raley, witnesses testifying before the Ohio Un-American Activities Commission relied on their Fifth Amendment privilege against self-incrimination.  The witnesses were prosecuted for failing to respond to questions.  On appeal, the Ohio Supreme Court held that the witnesses were presumed to know that the state immunity statute afforded the witnesses immunity from prosecution based on their answers before the commission and, even though the state statute did not preclude federal

23

prosecution, it was sufficient to compel responses.  The convictions were affirmed.  The Supreme Court held that the commission could not advise the witnesses that the privilege was available and then prosecute them for asserting it.  The Court concluded that the convictions violated due process and must be reversed.  360 U.S. at 425, 434, 437-38.

In Cox, the defendant was convicted of violating a Louisiana statute precluding picketing near a courthouse.  The defendant was affirmatively granted permission to demonstrate across the street from the courthouse steps.  The Supreme Court held that convicting the defendant for demonstrating in the exact place where local officials had told him he could demonstrate violated his due process rights.  379 U.S. at 571-72.

In this case, Cyr did not tell Winer that he did not have to report to the sex offender registration unit or had to report only if he had a permanent address.  The jury did not believe Winer's testimony that he had spoken to persons in the sex offender registration unit by phone and had been advised not to report until he had a permanent address.   In support of his habeas petition, Winer now argues that two other state officials, Probation Officer Berglund and a Connecticut State Trooper, also interpreted residence address as a specific street address.  He provides no evidence, however, that either official told him about this interpretation at the time he failed to register.  Absent evidence that Winer was advised by the sex offender registration unit not to report or by anyone charged with enforcing the statute that he need not comply with the registration requirement until he had a permanent address, the holdings in Raley and Cox and their progeny do not apply.  Winer's argument in his reply brief focuses on the meaning of the term "residence address" and ignores the fact that no one advised him

24

that the statute did not apply unless he had obtained a permanent address.

The registration statute requires registration within three days of release or, if the prisoner is incarcerated in Connecticut, registration prior to release as directed by the Commissioner of Correction.  Conn. Gen. Stat. § 54-251(a).  Winer now argues that he completed the registration requirement when Counselor Cyr submitted the registration documents to the sex offender registration unit in January 2000 and contends that a follow-up visit to the sex offender registration unit was not required.

The statute provides, however, that if the prisoner declines to complete the registration forms while incarceration, the correctional official should inform the prisoner of his obligation to report to the sex offender registration unit within three days of his release.  When Winer did not know his permanent address, Counselor Cyr indicated a refusal to provide the information on the form and instructed Winer that he must report to the sex offender registration unit within three days of his release.  Again, Winer ignores this fact.  Although Winer disputes the accuracy of Counselor Cyr's characterization of his response to the question, Winer did not fully comply with the registration requirement while incarcerated.  No information was provided to enable the sex offender registration unit to fulfill its purpose of monitoring the location of Winer, a sex offender.  Thus, Winer's argument that he was not required to report to the sex offender registration unit because he completed the registration requirement while in prison is unavailing.

In reaching its conclusion, the Connecticut Appellate Court reviewed the entire record.  Thus, the court applied the correct federal law, which requires a consideration of the charge as a whole.  The state court decision—that a jury charge on mistake of

25

law was not required—is not an unreasonable application of federal law and reflects a reasonable determination of the facts in light of the evidence presented.  The Petition for a writ of habeas corpus is denied on this ground as well.

## V.      Conclusion

The Fourth Amended Petition for a writ of habeas corpus (**Doc. No. 17**) is **DENIED**.  The court concludes that Winer has not demonstrated the denial of a constitutional right.  Accordingly, a certificate of appealability will not issue.  The Clerk is directed to enter judgment and close this case.

**SO ORDERED**

Dated this seventeenth day of February, 2012, at Bridgeport, Connecticut.

        /s/ Janet C. Hall
Janet C. Hall
United States District Judge